## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| JULIE VOEKS and JEFFERY MERKOVICH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No.: 18-cv-1682 |
| | ) | **AMENDED CLASS ACTION** |
| | ) | **COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **Jury Trial Demanded** |
| ALLIANCEONE RECEIVABLES | ) | |
| MANAGEMENT INC., | ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Jeffery Merkovich is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family, or household purposes.

6.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from a consumer transaction that included agreements to defer payment.

7.     Defendant AllianceOne Receivables Management, Inc. ("ARM") is a debt collection agency with its principal offices located at 4850 East Street Road, Suite 300, Trevose, Pennsylvania 19053.

8.     ARM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     ARM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10.    ARM is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

11.    ARM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### Facts Related to Plaintiff Voeks

12.    On or about December 23, 2017, TD Bank USA, N.A. ("TD Bank") mailed Plaintiff Voeks a credit card account statement regarding an alleged debt Plaintiff owed to TD Bank for purchases and other charges incurred as a result of the use of her "Target" store-branded credit card.  A copy of this account statement is attached to this Complaint as Exhibit A.

2

13.    Exhibit A contains the following:

**Payment Information**

| | |
|---|---|
| New Balance | $4,249.39 |
| Minimum Payment Due | $886.00 |
| Payment Due Date | 1/20/2018 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay up to a $38.00 late fee.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum Payment | 15 years | $9,720 |

If you would like information about credit counseling services, call 1-800-991-8433.

14.    Exhibit A also contains the following:

**Summary of Account Activity**

| | |
|---|---|
| Previous Balance | $4,129.41 |
| Payments and Other Credits | -$0.00 |
| Purchases and Other Debits | +$0.00 |
| Cash Advances | +$0.00 |
| Past Due Amount | $724.00 |
| **Fees Charged** | +$38.00 |
| **Interest Charged** | +$81.98 |
| New Balance | $4,249.39 |
| | |
| Total Credit Limit | $0.00 |
| Cash Limit | $0.00 |
| Available Credit | $0.00 |
| Portion Available for Cash | $0.00 |
| The Cash Limit is a portion of the Total Credit Limit | |
| Statement Closing Date | 12/23/2017 |
| Days in Billing Cycle | 30 |

3

15. Exhibit A states that, as of December 23, 2017, Plaintiff Voeks's Target store-branded credit card account ending in 7082 had a "New Balance" of $4,249.39, with an "Past Due Amount" of $724.00, a "Minimum Payment Due" of $886.00," and a "Payment Due Date" of January 20, 2018.

16. Exhibit A further states that, if Plaintiff Voeks does not make the minimum payment by the payment due date, Plaintiff Voeks "may have to pay up to a $38.00 late fee."

17. Exhibit A also contains information about how the debtor can exercise his rights to assert a billing dispute under the Fair Credit Billing Act. *See* 15 U.S.C. § 1637b.

18. Exhibit A instructs the debtor to "write us at TD Bank USA, N.A., c/o Target Card Services, P.O. Box 9500, Minneapolis, Minnesota 55440," to provide the debtor's name and account number, the dollar amount of the suspected error, and a description of the dispute. *See* 15 U.S.C. § 1666(a).

19. Exhibit A further instructs the debtor that the dispute must be communicated in writing within 60 days. *See* 15 U.S.C. § 1666(a).

20. On or about December 25, 2017, ARM mailed a debt collection letter to Plaintiff Voeks regarding the same alleged debt owed to TD Bank and associated with Plaintiff's Target store-branded credit account ending in 7082. A copy of this letter is attached to this complaint as Exhibit B.

21. The alleged debt referenced in Exhibit B was incurred for personal, family, or household purposes, including purchases of household goods from Target.

22. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit B is a form debt collection letter, used by ARM to attempt to collect alleged debts.

4

24. Upon information and belief, Exhibit B was the first letter ARM sent to Plaintiff Voeks regarding this alleged debt.

25. Exhibit B includes the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

IMPORTANT DISCLOSURES:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

26. The header in Exhibit B contains the following:

Name: JULIE F VOEKS
Issuer (Creditor) Reference Number: ███████7082
Issuer (Creditor): TD Bank USA, N.A.
Account Balance: $4,249.39

27. The header in Exhibit B states the account balance is $4.249.39 and does not reference a minimum payment.

28. The body in Exhibit B contains the following:

The above referenced account has been referred to our office by TD Bank USA, N.A. for collection. All further communication should be directed to this office. Any written correspondence may be mailed to the address above. PLEASE READ CAREFULLY ALL OF THE IMPORTANT DISCLOSURES PROVIDED BELOW.

The Account Balance of $4,249.39 is the full amount owed as of the date of this letter. Because of interest and late charges that may vary from day to day, the Account Balance due on the day you pay may be greater. Please contact us for the updated Account Balance if you would like to pay the account in full after the date of this letter.

A Minimum Amount Due of $886.00 is an amount that will bring your account to a current status and stop collections (unless your account goes past due in the future), if paid by 01/20/2018. The account would then be returned to our client. PLEASE NOTE that the due date for paying the Minimum Amount Due does not affect or diminish your important rights stated below, including your right to dispute this debt and request validation of this debt during the 30 days following your receipt of this letter as described below. If you do not pay the Minimum Amount Due by 01/20/2018, you are not giving up any of your rights regarding this debt.

Any payments should be mailed to Target Card Services at the address provided below. If you are experiencing financial difficulties, call our office at 866-672-3286 and a representative will assist you in negotiating a suitable arrangement.

5

29.     Exhibit B also contains a payment remittance slip, which contains the following:



| To contact us regarding your account, call: 866-672-3286 | AllianceOne Receivable Management, Inc. | |
| --- | --- | --- |
| **Regarding** | | |
| **TARGET CARD SERVICES** | | |
| **Issuer Reference Number** | **Balance** | **Amount Enclosed** |
| 7082 | $4,249.39 | $              . |

30.     Exhibit B states that "If you do not pay the Minimum Amount Due by 01/20/2018, you are not giving up any of your rights regarding this debt."

31.     Upon information and belief, if the consumer does not make the minimum payment by the minimum payment due date, TD Bank either accelerates the debt or imposes a late fee up to $38.00.  *See* Exhibit A.

32.     In fact, by making a minimum payment, the consumer exercises her right to cure any default, and avoid acceleration of the balance or the imposition of a late charge.  *See* Exhibit A ("If we do not receive your minimum payment by the date listed above, you may have to pay up to a $38.00 late fee."); *see also, e.g., Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1361 (D. Utah May 23, 2014) ("with a typical credit card balance, a separate late fee is applied according to the disclosed late fee schedule in addition to the disclosed 19.99% interest rate that applies to the outstanding balance."); *Johnson v. LVNV Funding*, 2016 U.S. Dist. LEXIS 19651, at *13-14 (Feb. 18, 2016) ("Johnson admits that she had credit cards and does not dispute the WaMu credit card statements, which show a debt in her name from a revolving credit card, with minimum payments and a maximum credit line amount.  . . .  Thus, Johnson had an installment-payment account regarding which she could make payments to restore her merchant-customer relationship.  She was entitled to a right to cure before the debt was accelerated and a collection lawsuit was brought.").

6

33.    If Plaintiff does not make the minimum payment by the due date, she foregoes her right to cure the default by making that minimum payment; if so, the creditor may impose a late fee, and, under certain circumstances, may accelerate the balance. *See Johnson*, 2016 U.S. Dist. LEXIS 19651, at *13-26 (describing the circumstances under which the creditor may accelerate the balance); *see also* Wis. Stat. §§ 425.104 and 425.105.

34.    The representation that the consumer does not give up "any rights" regarding the debt is false, deceptive, misleading, and confusing to the unsophisticated consumer because the failure to make the minimum payment may cause the creditor to impose a late fee or accelerate the remaining balance of the debt.

35.    Even assuming the creditor cannot accelerate the debt because it has not provided the alleged debtor with a notice of right to cure, it may mail the notice of right to cure because the consumer failed to make the minimum payment. Because the consumer's statutory right to cure default may only be exercised twice during any 12-month period, she foregoes her rights even if she cures the default and the balance is not accelerated. *See* Wis. Stat. § 425.105(3).

36.    Moreover, Exhibit B states that the account has been referred to ARM and instructs the consumer that "All further communication should be directed to this office. Any written correspondence for this account should be mailed to 4850 Street Rd. Suite 300, Trevose, PA 19053."

37.    The unsophisticated consumer, receiving Exhibit B would direct any billing disputes to ARM, essentially communicating the dispute through the FDCPA procedures.

38.    Exhibit B directs billing disputes away from the creditor address provided in Exhibit A.

39.    Where the FDCPA does not specify an address for consumers to send their disputes, consumers disputing debts under the FCBA must send their disputes to the specific

address that the creditor discloses in each billing statement. *Compare, e.g., Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018) ("it is irrelevant that the Clinic sent the Letters to PRA's general counsel rather than the special disputes department.") *with* 15 U.S.C. § 1666(a) (for a dispute to be effective, it must be received at the address disclosed under 15 U.S.C. § 1637(b)(10)).

40.     A dispute under the FCBA entitles the consumer to greater protections than a dispute under the FDCPA.

41.     Unlike the FDCPA, the FCBA requires creditors to respond rather than simply cease collection efforts. *Compare* 15 U.S.C. § 1666(a) (creditor "shall" respond to FCBA disputes) *with Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (debt collector may cease debt collection activities rather than verify debt in response to FDCPA disputes).

42.     Moreover, where the debt is disputed under the FDCPA, the debt collector may respond by ceasing debt collection rather than contacting the creditor to verify the debt, and the creditor may never discover that the debt was disputed, and would continue to report the debt to credit bureaus without the disputed flag.

43.     Because an FCBA dispute is made directly to the creditor, it would result in accurate reporting to consumer credit bureaus.

44.     The instruction that the consumer should direct "all further communication" to ARM contradicts and overshadows the consumer's statutory rights to dispute the debt under the FCBA.

45.     Exhibit B also contains false, deceptive, misleading, confusing, and contradictory representations as to the amounts that are owed and due on Plaintiff Voeks's account.

46.     The header and payment remittance slip in Exhibit B, which are offset and easily read, state the "Account Balance" is $4,249.39 and do not reference a minimum payment due.

8

47. The body in <u>Exhibit B</u> states a "Minimum Amount Due" of $886.00 but also represents that the entire "Account Balance" of $4,249.39 is due in full.

48. The body in <u>Exhibit B</u> states that "The Account Balance of $4,249.39 is the full amount owed as of the date of this letter," and that, "A Minimum Amount Due of $886.00 is an amount that will bring your account to a current status and stop collections . . . if paid by 01/20/2018."

49. However, the body in <u>Exhibit B</u> further states that the debtor should contact ARM if the she wishes to pay the account in full, noting that "[b]ecause of interest and late charges that may vary from day to day, **the Account Balance due on the day you pay** may be greater." (emphasis added).

50. The unsophisticated consumer would understand the statement that "the Account Balance due on the day you pay may be greater" to be a representation that the entire account balance, rather than just the minimum payment, was due.

51. The body of <u>Exhibit B</u> represents to the unsophisticated consumer that the entire account balance is due as of the date of <u>Exhibit B</u>.

52. As of the date of <u>Exhibit B</u>, the entire account balance was not due. TD Bank had not accelerated the balance of the account, which is why <u>Exhibit B</u> states that "A Minimum Amount Due of $886.00 is an amount that will bring your account to a current status and stop collections . . . ."

53. The unsophisticated consumer would be confused as to the amount of the debt ARM was attempting to collect, and whether AllianceOne was attempting to collect only the Minimum Amount Due, or the Account Balance. *E.g., Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.");

9

*Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("Only the past due amount, the amount owed [to the debt collector] can be the 'amount of the debt' under § 809(a)(1).").

54.     On a credit card account, the amount "due" and the amount "owing" are different concepts. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time."); *see also Balke v. Alliance One Receivables Mgmt.*, 2017 U.S. Dist. LEXIS 94021, at *15-16 (E.D.N.Y. June 19, 2017).

55.     Upon information and belief, ARM was hired to collect the Minimum Amount Due.

56.     ARM compounds the confusion by stating the "above referenced *account* has been referred to our office by TD Bank USA, N.A. for collection." (emphasis added), including only the "Account Balance" in the header and payment remittance slip, stating that interest and late charges may cause "the Account Balance due on the day you pay [to be] greater," and leaving the "Amount Enclosed" field for the consumer to fill in.

57.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes* that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." *Barnes*, 493 F.3d at 840. Whichever number ARM is truly collecting, it need only state that amount in the letter.

58. The different amounts on Exhibit B render Exhibit B confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount ARM was actually attempting to collect.

59. Exhibit B equivocates as to the amount that ARM is actually trying to collect.

60. Exhibit B indicates that ARM is actually attempting to collect the entire account balance when it is not.

61. Upon information and belief, the purpose of ARM's conduct – equivocating as to the amount it is hired to collect – is to increase its profits under false pretenses.

62. Upon information and belief, ARM, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

63. Upon information and belief, if a consumer pays ARM an amount greater than the "Amount Now Due," ARM is still entitled to retain a portion of that recovery.

64. By equivocating as to the amount it is attempting to collect and confusing consumers as to the amount owed as of the date of Exhibit B, ARM essentially pre-maturely accelerates the balance of the debt.

65. Moreover, under *Chuway* and *Barnes*, ARM cannot attempt to collect the entire balance that is owed to TD Bank because "only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ." *Barnes*, 493 F.3d at 840; *Chuway*, 362 F.3d at 948; *see also* 15 U.S.C. § 1692e(2)(a).

66. Even assuming the unsophisticated consumer somehow understood ARM was hired to collect the "Minimum Amount Due," she would be misled to believe that the balance had been accelerated and was due in full as of the date of Exhibit B.

67. While a creditor may hire a debt collector to collect the past due amount in its entirety, it is not required to do so.

68. A creditor that engages a debt collector on a contingency basis, which entitles the debt collector to retain a percentage of any amount recovered, may engage the debt collector to portions of the balance that are seriously delinquent, but engage in-house efforts to collect portions that are have only recently become due or past due.

69. The confusion caused by the false and confusing statements in Exhibit B would necessarily intimidate the unsophisticated consumer, and distract her attention away from her dispute rights. *E.g., Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009).

70. Plaintiff Voeks was confused and misled by Exhibits A & B.

71. The unsophisticated consumer would be confused and misled by Exhibits A & B.

72. Plaintiff Voeks had to spend time and money investigating Exhibits A & B, and the consequences of any potential responses to Exhibits A & B.

### ***Facts Related to Plaintiff Merkovich***

73. On or about March 22, 2018, ARM mailed a debt collection letter to Plaintiff Merkovich regarding an alleged debt owed to "Credit First, N.A." A copy of this letter is attached to this complaint as Exhibit C.

74. Upon information and belief, the alleged debt referenced in Exhibit C was incurred by use of a credit card, used only for personal, family, and household purposes.

75. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Merkovich inserted by computer.

76. Upon information and belief, Exhibit C is a form debt collection letter, used by ARM to collect alleged debts.

77. Exhibit C states that the balance of Plaintiff Merkovich's alleged debt is $1,156.95.

78. Exhibit C also includes the following representations:

We can reduce the balance of your past due account by 35%!

We will accept a reduced payment amount of $752.02.

79. Additionally, Exhibit C includes the following representations:

| Regarding: | Credit First, N.A. | |
|---|---|---|
| Creditor Reference Number | Balance | Offer Amount |
| ████7757 | $1,156.95 | $752.02 |

80. Upon information and belief, the offer to "reduce the balance" stated in Exhibit C is actually an offer to settle the account, not a reduced balance by which the consumer may pay the account in full.

81. In the context of credit reporting, there is a difference between resolving an account by paying the account in full and resolving the account by settling it in full. The unsophisticated consumer would be confused as to whether the account would be reported as "paid in full" or "settled in full." *See e.g., Molton v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. 659, at *13 (N.D. Ill. Jan. 21, 2004); *Nielsen v. E*Trade Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39781, at *4-5 (E.D. Mich. Mar. 30, 2015); *Shaw v. Experian Info. Solutions, Inc.*, 2016

U.S. Dist. LEXIS 134991, at *31-32 (S.D. Calif. Sept. 28, 2016); *Keller v. Trans Union LLC*, 2017 U.S. Dist. LEXIS 283, at *7-8 (D. Ariz. Jan. 3, 2017).

82.     Upon information and belief, if the consumer paid the "full reduced balance amount," ARM, and/or the creditor, would report the account to consumer reporting agencies as "settled in full" rather than "paid in full."

83.     Upon information and belief, ARM uses the phrases "reduce the balance" and "reduced payment amount" to confuse consumers and induce them into paying this amount under the assumption that ARM, and the creditor, will report the account to consumer reporting agencies as "paid in full."

84.     Plaintiff Merkovich was confused and misled by Exhibit C.

85.     The unsophisticated consumer would be confused and misled by Exhibits C.

86.     Plaintiff Voeks had to spend time and money investigating Exhibits C, and the consequences of any potential responses to Exhibits C.

### The FDCPA

87.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin.*

14

*LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same);

15

*see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

88.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

89.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

90.     15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

91.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

92.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

16

93.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

94.    15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

. . .

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

95.    The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer, and must do so in a non-confusing manner.

17

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

96.     The Seventh Circuit has also held that a debt collector must disclose the consumer's rights to dispute the debt clearly and may not include confusing language that obscures the consumer's statutory rights by distracting her attention away from the validation notice. *Muha*, 558 F.3d at 629-30.

97.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

98.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

18

99.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

100.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

101.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

102.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

103.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

104.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

19

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

105. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

106. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

107. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

108. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

109. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

20

110.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

111.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112.     Count I is brought on behalf of Plaintiff Voeks.

113.     Exhibit B states that, "If you do not pay the Minimum Amount Due by [the due date], "you are not giving up any of your rights regarding this debt."

114.     Failure to make the minimum payment by the due date could result in the creditor imposing late fees, accelerating the debt, or requiring the consumer to exercise one of her two statutory opportunities to have the right to cure the default.

115.     Exhibit B also instructs the consumer that "All further communication should be directed to this office."

116.     Exhibit B instructs the unsophisticated consumer that to send billing disputes to the debt collector rather than the creditor, which could cause the debtor to forego his rights to dispute billing errors under the FCBA.

117.     Exhibit B instructs consumers that "Any correspondence for this account should be mailed to 4850 Street Rd. Suite 300, Trevose, PA 19053."

118.     Exhibit B overshadows and contradicts the consumer's right to dispute the debt by telephone.

119.     Exhibit B is false, deceptive, misleading, and confusing to the unsophisticated consumer and overshadows the consumer's validation rights.

120.     Defendant violated 15 U.S.C. § 1692e, 1692e(10), 1692f, and 1692g(a)(3).

21

## COUNT II -- FDCPA

121.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

122.     Count II is brought on behalf of Plaintiff Voeks.

123.     Exhibit B misstates the amount due on Plaintiff's account.

124.     By representing the entire balance of the account to be due, Exhibit B confuses and misleads the consumer about the amount, character, and status of the debt, and attempts to collect portions of the balance that are not yet due.

125.     Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT III – FDCPA

126.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

127.     Count III is brought on behalf of Plaintiff Voeks.

128.     Exhibit B represented the amount of the debt that ARM was attempting to collect in a confusing manner by stating multiple amounts that ARM was attempting to collect.

129.     The unsophisticated consumer would be confused, deceived, and misled to believe that ARM was attempting to collect the total balance, when it was not actually doing so because the debt had not yet been accelerated.

130.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT IV – WCA

131.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

22

132. Count IV is brought on behalf of Plaintiff Voeks.

133. ARM is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. Ch. 74.

134. ARM misrepresented the amount due on Plaintiff's account as of the date of its letter.

135. ARM misrepresented the amount it was authorized to collect and attempting to collect with Exhibit B.

136. Exhibit B confuses and misleads debtors about their statutory rights.

137. Exhibit B violates the FDCPA.

138. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT V - FDCPA

139. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

140. Count IV is brought on behalf of Plaintiff Merkovich.

141. By stating that ARM "can reduce the balance of your past due account," Exhibit C includes false, deceptive, and misleading representations as to whether payment of the such would result in the account being reported to consumer reporting agencies as "Paid in Full" or "Settled in Full."

142. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT VI - WCA

143. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

144. Count IV is brought on behalf of Plaintiff Merkovich.

23

145.    Exhibit C violates the FDCPA.

146.    ARM is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. Ch. 74.

147.    Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

148.    Plaintiff brings this action on behalf of three Classes.

149.    Class I consists of (a) all natural persons in the United States of America, (b) who were sent an account statement in the form represented by Exhibit A and an  initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a credit card account debt owed to TD Bank, (d) which debt was incurred for personal, family, or household purposes, (e) where the letter in the form of Exhibit B was mailed between October 22, 2017 and October 22, 2018, inclusive, (f) and was not returned by the postal service. Plaintiff Voeks is the proposed class representative for Class I.

150.    Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an account statement in the form represented by Exhibit A and an  initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a credit card account debt owed to TD Bank, (d) which debt was incurred for personal, family, or household purposes, (e) where the letter in the form of Exhibit B was mailed between October 22, 2017 and October 22, 2018, inclusive, (f) and was not returned by the postal service. Plaintiff Voeks is the proposed class representative for Class II.

151.    Class III consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt was incurred for personal, family, or household purposes, (d) mailed

between October 22, 2017 and October 22, 2018, inclusive, (e) and was not returned by the postal service. Plaintiff Merkovich is the proposed class representative for Class III.

152.    The classes are so numerous that joinder is impracticable.    Upon information and belief, there are more than 50 members of each class.

153.    There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits B & C violates the FDCPA and WCA.

154.    Plaintiffs' claims are typical of the claims of the Class members.    All are based on the same factual and legal theories.

155.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

156.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

157.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  October 22, 2018

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
       John D. Blythin (SBN 1046105)
       Mark A. Eldridge (SBN 1089944)
       Jesse Fruchter (SBN 1097673)
       Ben J. Slatky (SBN 1106892)
       3620 East Layton Avenue
       Cudahy, WI 53110
       (414) 482-8000
       (414) 482-8001 (fax)
       jblythin@ademilaw.com
       meldridge@ademilaw.com
       jfruchter@ademilaw.com
       bslatky@ademilaw.com